## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STACY SCHAPKER, | |
| Plaintiff, | Case No. 17-cv-02365 |
| v. | |
| WADDELL & REED FINANCIAL, INC.; THE COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF WADDELL & REED FINANCIAL, INC.; THE ADMINISTRATIVE COMMITTEE OF THE WADDELL & REED FINANCIAL, INC. SECTION 401(K) AND THRIFT PLAN; and ALAN W. KOSLOFF; MICHAEL F. MORRISSEY; JAMES M. RAINES; JERRY W. WALTON; DANIEL P. CONNEALY; SARA L. KIRCHER; MARK S. NEWMAN; MICHAEL D. STROHM; JOHN E. SUNDEEN, JR.; BRENT K. BLOSS; MELISSA A. CLOUSE; CHRISTOPHER W. RACKERS; and AMY J. SCUPHAM , | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| Defendants. | |

### INTRODUCTION

1.     Pursuant to Federal Rule of Civil Procedure 15(a)((2), this second amendment to Plaintiff's complaint is being filed with the written consent of counsel representing all of the defendants named herein, including the Individual Defendants who were referenced as "Jane and John Doe" defendants in the original and first amended complaints.  Plaintiff Stacy Schapker ("Plaintiff"),  individually and on behalf of the Waddell & Reed Financial, Inc. Section 401(k) and Thrift Plan (the "401(k) Plan") and a class of similarly situated participants in the 401(k) Plan, brings this action for breach of fiduciary duty  and prohibited transactions under the Employee Retirement Income Security Act of 1974, as  amended ("ERISA"), against Waddell & Reed

Financial, Inc. ("WR FINANCIAL"), which serves as the 401(k) Plan's "Administrator" and one of its employer "Sponsors"; the 401(k) Plan's Administrative Committee ("Administrative Committee"); the current and former members of that Administrative Committee during the Class Period, which WR FINANCIAL's Form 11-K SEC filings have identified as Mr. Daniel P. Connealy, Ms. Sara L. Kircher, Mr. Mark S. Newman, Mr. Michael D. Strohm, Mr. John E. Sundeen, Jr., Mr. Brent K. Bloss, Ms. Melissa A. Clouse, Mr. Christopher W. Rackers, and Ms. Amy J. Scupham; and the members of the Compensation Committee ("Compensation Committee") of WR FINANCIAL'S Board of Directors (the "Board") during the Class Period, who appointed the members of the Administrative Committee and are identified as Messrs. Alan W. Kosloff, Michael F. Morrissey, James M. Raines, and Jerry W. Walton.

2.      The other employer "Sponsors" of the 401(k) Plan, all of which are affiliated with WR FINANCIAL, are:

- Waddell & Reed, Inc.

- Waddell & Reed Services Company

- Waddell & Reed Investment Management Company

- W&R Corporate LLC

- W&R Capital Management Group, Inc.

- Ivy Distributors, Inc.

- Ivy Investment Management Company

3.      Plaintiff brings this action by and through her undersigned attorneys based upon her personal knowledge; information contained in the 401(k) Plan's January 11, 2017 Summary Plan Description ("SPD") (attached as Exhibit A); the 401(k) Plan's publicly-available Form

5500 series filings with the United States Department of Labor; the account information and statements provided to Plaintiff as a participant in the 401(k) Plan; and other information publicly available or obtained through counsel's investigation.  Plaintiff  anticipates that discovery will uncover further support for the allegations in this Second Amended Complaint and, potentially, for additional claims.

4.      As described herein, Defendants have breached their fiduciary duties and engaged in prohibited transactions with respect to the 401(k) Plan in violation of ERISA, to the detriment of the Plan and its participants and beneficiaries. Plaintiffs bring this action to remedy this unlawful conduct, prevent further mismanagement of the Plan, and obtain equitable and other relief as provided by ERISA.

## NATURE OF THE ACTION

5.      This is a civil enforcement action under ERISA, and in particular under ERISA §§ 404, 406, 409, and 502(a)(2), 29 U.S.C. §§ 1104, 1106, 1109, and 1132(a)(2).

6.      This class action concerns the 401(k) Plan, of which Plaintiff is a participant, and is brought on behalf of all participants in the 401(k) Plan during the six-year period of June 23, 2011 through the present (the "Class Period").

7.      All of the Defendants were during the Class Period fiduciaries of the 401(k) Plan. Defendants WR FINANCIAL, the Administrative Committee, and the individual Administrative Committee members were responsible for selecting, monitoring, and removing investment options made available to the 401(k) Plan participants, and the WR FINANCIAL Board's Compensation Committee appointed the members of the Administrative Committee.

8.      The fiduciary obligations of plan fiduciaries to the participants and beneficiaries of an ERISA-governed plan are "the highest known to the law." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598, 602 (8th Cir. 2009).

9.      Fiduciaries must act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1).

10.     When selecting investment options for an ERISA-governed plan, the plan's fiduciaries are required to perform with undivided loyalty, act prudently, and defray reasonable plan expenses. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

11.     ERISA prohibits certain transactions and arrangements that have a high potential for abuse, including but not limited to certain self-dealing transactions between the plan and a fiduciary or party in interest. ERISA § 406(a)-(b), 29 U.S.C. § 1106(a)-(b).

12.     During the Class Period and while fiduciaries of the 401(k) Plan, instead of acting for the exclusive benefit of the 401(k) Plan and its participants and beneficiaries, Defendants acted for the benefit of WR FINANCIAL and its affiliates, forcing the 401(k) Plan nearly exclusively into investments managed by WR FINANCIAL or an affiliated entity, which charged excessive fees that benefited WR FINANCIAL or its affiliated entities and which performed worse than comparable available options.

13.     During the Class Period, Defendants could have chosen non-proprietary, less costly, better-performing investment options for the 401(k) Plan.

14.     During the Class Period, rather than choose non-proprietary, less costly, better-performing investment options for the 401(k) Plan, Defendants simply offered as investment options whatever investment products were part of the then-available line-up of "Waddell & Reed"

4

and "Ivy Funds" investment products on the market – i.e., funds established and managed by WR FINANCIAL and its affiliates.

15.     Upon information and belief, the only criteria (or virtually the only criteria) used by Defendants when determining what investment options to make available to the 401(k) Plan participants was whether the investment product was part of the then-available line-up of "Waddell & Reed" and "Ivy Funds" investment products established and managed by the 401(k) Plan's own Administrator, WR FINANCIAL, or its affiliates.

16.     Defendants breached their fiduciary duties and engaged in prohibited transactions through a number of actions and inactions, including but not limited to the following:

    a.  Selecting or retaining as the investment options for 401(k) Plan participants investment products that:

        i.  In all or nearly all cases, were operated and managed by Defendants themselves – i.e., by WR FINANCIAL or its affiliates;

        ii.  In nearly all cases, cost more than comparable available investment options;

        iii.  In nearly all cases, performed worse than comparable available investment options; and

        iv.  In a number of cases and during a substantial portion of the Class Period, were duplicative in content but not cost – i.e., the same investment product with the same holdings cost more when branded one way (e.g., "Waddell & Reed") than when branded another way (e.g.,"Ivy")-.

    b.  Failing to include (at all or in sufficient numbers) investment options for 401(k) Plan participants that:

      i.   Were operated and managed by someone other than Defendants themselves – i.e., by WR FINANCIAL or its affiliates;

      ii.   Cost less; and

      iii.   Performed better.

c.  Selecting as the default investment option for a 401(k) Plan participant an investment product operated and managed by Defendants themselves – i.e., by WR FINANCIAL or its affiliates.

d.  Failing to concentrate assets so as to qualify for investment funds that had lower fees and leverage plan assets to drive down fees.

17.    Plaintiff brings this action for the losses the 401(k) Plan has sustained and the disgorgement of all unlawful fees, expenses, and profits Defendants have taken, and to obtain such further equitable or remedial relief as may be appropriate to redress and to enforce the provisions of Title I of ERISA.

## JURISDICTION AND VENUE

18.     **Subject Matter Jurisdiction.** This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to ERISA § 502(e)(1), 29 U.S.C. §1132(e)(1), which provides for federal jurisdiction of civil actions brought under Title I of ERISA.

19.     **Personal Jurisdiction.** This court has personal jurisdiction over Defendants because they reside and/or transact business in and have significant contacts with this District, and because ERISA provides for nationwide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), and the 401(k) Plan is and was administered in this District and the breaches of ERISA took place herein. This Court also has personal jurisdiction over Defendants pursuant to Fed. R Civ. P. 4(k)(1)(A) because they would be subject to the jurisdiction of a court of general jurisdiction in Kansas.

20.     **Venue.** Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C.§ 1132(e)(2), because the 401(k) Plan is and was administered in Overland Park, Kansas, within this District, the breaches of ERISA took place in this District, and/or a defendant resides or may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because a defendant resides and/or does business in this District and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## PARTIES

21.     **Plaintiff Stacy Schapker**. Plaintiff Stacy Schapker is a resident of Shawnee, Kansas. She participated in the 401(k) Plan during the Class Period and continues to participate in the 401(k) Plan. Plaintiff's assets in the 401(k) Plan were invested in various investment

products included on the 401(k) Plan's "menu" of then-available investment options, which were selected by Defendants.  Plaintiff discovered her claims shortly before commencing this action.

22.     **Defendant Waddell & Reed Financial, Inc.** Defendant WR FINANCIAL, is a Delaware corporation with its principal place of business at 6300 Lamar Avenue, Overland Park, Kansas, and may be served through its registered agent:  The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, KS 66603.   By and through its subsidiaries, WR FINANCIAL provides investment management and financial planning services to clients throughout the United States.  WR FINANCIAL is one of the 401(k) Plan's Sponsors and the 401(k) Plan Administrator, and WR FINANCIAL Board's Compensation Committee selects the members of the 401(k) Plan's Administrative Committee.

23.     **Defendant Administrative Committee of the Waddell & Reed Financial, Inc. Section 401(k) and Thrift Plan.**  Defendant Administrative Committee is designated under the 401(k) Plan to carry out fiduciary responsibilities for WR FINANCIAL in its role as 401(k) Plan Administrator, including selection of the investment options made available to 401(k) Plan participants.  According to the SPD, the Administrative Committee "is also the agent for service of legal process; that is, the person to receive papers, such as a summons, in lawsuits involving the Plan." (Ex. A, SPD, at 4.)  The Administrative Committee's individual members during the Class Period are named as Individual Defendants herein.  The Administrative Committee may be served at its principal place of business, 6300 Lamar Avenue, Overland Park, Kansas, or the registered agent:  The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

24.     **Defendant Compensation Committee of the Waddell & Reed Financial, Inc**. **Board of the Directors.**  The Compensation Committee of the Board has the authority and

discretion to appoint and remove members of the Administrative Committee, and the Compensation Committee is a functional fiduciary of the 401(k) Plan under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). The Compensation Committee's individual members during the Class Period are named as Individual Defendants herein. The Compensation Committee may be served at its principal place of business, 6300 Lamar Avenue, Overland Park, Kansas, or the registered agent: The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

25. **Individual Defendants.** During the Class Period, the members of the Administrative Committee were as follows:

a. Mr. Daniel P. Connealy (Administrative Committee)

b. Ms. Sara L. Kircher (Administrative Committee)

c. Mr. Mark S. Newman (Administrative Committee)

d. Mr. Michael D. Strohm (Administrative Committee)

e. Mr. John E. Sundeen, Jr. (Administrative Committee)

f. Mr. Brent K. Bloss (Administrative Committee)

g. Ms. Melissa A. Clouse (Administrative Committee)

h. Mr. Christopher W. Rackers (Administrative Committee)

i. Ms. Amy J. Scupham (Administrative Committee)

And, during the Class Period, the members of the Compensation Committee, which was delegated the responsibility of appointing and removing the members of the Administrative Committee, were as follows:

j. Mr. Alan W. Kosloff (WR FINANCIAL Board's Compensation Committee)

k. Mr. Michael F. Morrissey (WR FINANCIAL Board's Compensation Committee)

l.   Mr. James M. Raines (WR FINANCIAL Board's Compensation Committee), and

m.  Mr. Jerry W. Walton (WR FINANCIAL Board's Compensation Committee).

These members of the Administrative Committee and Compensation Committee during the Class Period are referred to herein collectively as the "Individual Defendants."

26.     Defendants WR FINANCIAL, the Compensation Committee, the Administrative Committee, and the Individual Defendants are or during the Class Period were fiduciaries to the 401(k) Plan within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), and parties in interest to the 401(k) Plan within the meaning of  ERISA §§ 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C).

## THE 401(k) PLAN

27.     The 401(k) Plan is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), subject to the provisions of Title I of ERISA pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a).

28.     The 401(k) Plan is also a "defined contribution 401(k) Plan" or  "individual account 401(k) Plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

29.     The 401(k) Plan covers eligible employees of WR FINANCIAL and other participating employers and sponsors of the 401(k) Plan,  all of which are affiliates of WR FINANCIAL.

30.     Participants in the 401(k) Plan have the opportunity to direct the investment of all of the  assets allocated to their individual accounts into the investment options offered by the 401(k) Plan, and  the return on those investments are credited to each participant's account.

31.     The 401(k) Plan's benefits are funded by participants' voluntary tax-deferred contributions as well as employer contributions.  Participants "may elect to make 'Salary Deferral Contributions' to the Plan through regular payroll deductions in whole percentages of not less than 1% and not more than 50% of [the participant's] Safe Harbor Compensation."  (Ex. A, SPD, at 8.)

32.     As of the end of the 2016 plan year (the most recent year for which information is publicly available), the 401(k) Plan had $190,375,417 in assets and 2,075 participants.  (Ex. B, 2016 Form 5500 for 401(k) Plan dated July 12, 2017, at page 2 and Schedule of Assets.)

33.     WR FINANCIAL, as 401(k) Plan Administrator, is responsible for selecting, monitoring, and  removing the investment options in the 401(k) Plan.  At some or all times during the Class Period, WR FINANCIAL  designated the Administrative Committee to carry out this duty.  The Administrative Committee's individual members are all  officers and/or key employees of WR FINANCIAL or its affiliates, appointed through the Board's Compensation Committee, and are not independent of WR FINANCIAL.

34.     The 401(k) Plan "provides the opportunity for Participants to invest in Company Stock, in shares of certain registered investment companies ("Mutual Funds") and certain common, collective or pooled trust funds ("CITs"), including Mutual Funds sponsored by the Company and the Waddell & Reed Collective Investment Trust (the "Waddell & Reed CIT")."  (Ex. A, SPD, at 18.)

35.     In a defined-contribution plan like the 401(k) Plan, the fiduciaries are obligated to assemble a diversified  menu of investment options from which participants may make their investment selections. 29 U.S.C. § 1104(a)(1)(C); 29 C.F.R. § 2550.404c-1(b)(1)(ii).

36.     Each investment alternative within a defined contribution plan is generally a pooled investment product—which includes mutual funds, collective investment trusts, and separate accounts—offering exposure to a particular asset class or sub-asset class. BrightScope and Investment Company Institute, 2016.  The BrightScope/ICI Defined Contribution Plan Profile:  A Close Look at 401(k) Plans, 2014. San Diego, CA:  BrightScope and Washington, DC:  Investment Company Institute at pages 36-37.  Available at www.ici.org/pdf/ppr_16_dcplan_profit_401k.pdf; Ian Ayres & Quinn Curtis, *Beyond Diversification: The Pervasive Problem of Excessive Fees and "Dominated Funds" in 401(k) Plans*, 124 Yale L.J. 1476, 1485 (2015) (hereinafter "*Beyond Diversification*").

37.     The broad asset classes generally include fixed investments, bonds, stocks, and occasionally real estate. Money market funds, guaranteed investment contracts, and stable value funds are examples of fixed investments. Bonds are debt securities, which are generally categorized by the issuer/borrower (U.S. Government, foreign governments, municipalities, corporations), the duration of the debt (repayable anywhere between 1 month and 30 years), and the default risk associated with the particular borrower. Equity, or stock, investments, obtain ownership shares of companies in anticipation of income from corporate dividends or appreciation in the value of the company. Equity investments are generally defined by three characteristics: (1) where the investment managers invest geographically (*i.e.*, whether they invest in domestic or international companies, or both); (2) the size of companies they invest in (generally categorized as small cap, mid cap, or large cap); and (3) their investment style, *i.e.* growth, value, or blend (growth funds invest in fast-growing companies, value funds look for more conservative or established stocks that are more likely to be undervalued, and blend funds

invest in a mix of growth stocks, value stocks, and companies in between). Balanced funds are a type of mutual fund that invests in a mix of stocks and bonds. Target-date funds assemble a broad portfolio of investments from different asset classes at a risk level that declines over time as the targeted retirement date approaches.

38.     Every pooled investment product charges certain fees and expenses that are paid by deductions from the pool of assets in transactions that typically occur on a monthly or quarterly basis. For example, within each of the WR FINANCIAL funds or collective investment trusts within the Plan, management fees are paid to WR FINANCIAL or one of its affiliates.

39.     Investment funds can be either passively or actively managed. Passive funds, popularly known as "index funds," seek to replicate the performance of a market index, such as the S&P 500, by purchasing a portfolio of securities matching the composition of the index itself. James Kwak, *Improving Retirement Savings Options for Employees*, 15 U. Pa. J. Bus. L. 483, 493 (2013). By following this strategy, index funds produce returns that are very close to the market segment tracked by the index. *Id*. Index funds therefore offer predictability, diversified exposure to a particular asset or sub-asset class, and low expenses. *Id*. Actively managed funds, on the other hand, pick individual stocks and bonds within a particular asset or sub-asset class and try to beat the market through superior investment selection. *Id*. at 485–86. Actively managed funds are typically more expensive than index funds, but offer the potential to outperform the market (although this potential typically may not be realized). U.S. Dep't of Labor, Understanding Retirement Plan Fees and Expenses, at 9 (Dec. 2011), available at

https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/publications/undrstndgrtrmnt.pdf.

40.     In addition to a core menu of designated investment alternatives, many plans also provide employees the option of opening a self-directed brokerage account ("SDBA"), giving them access to a broad array of stocks, bonds, and mutual funds. Ayres & Curtis, Beyond Diversification at 1485. However, in the 401(k) Plan at issue here, it does not appear that participants were able to extricate themselves from the core menu of designated alternatives selected by the fiduciaries by using a SDBA, as the 401(k) Plan's Form 5500 filings report that option was not made available.  See WR FINANCIAL 401(k) Plan Form 5500s for 2010 through 2016, Section 8a (Code 2R not present, indicating no self-directed brokerage account option). Thus, as explained below, 401(k) Plan participants were trapped in funds (other than a single money market fund sometime after June 30, 2016) that directly benefitted WR FINANCIAL and its affiliates.

## ERISA'S FIDUCIARY STANDARDS AND PROHIBITED TRANSACTIONS

41.     ERISA imposes strict fiduciary duties of loyalty and prudence upon Defendants as fiduciaries of the 401(k) Plan.  ERISA § 404(a), 29 U.S.C.§ 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and —
>
> (A)     for the exclusive purpose of:
>
> (i)     providing benefits to participants and their beneficiaries; and
>
> (ii)     defraying reasonable expenses of administering the plan;

(B)     with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;

(C)     by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D)     in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

42.     ERISA also imposes co-fiduciary duties on plan fiduciaries.  ERISA § 405,  29 U.S.C. § 1105, states in relevant part that:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1)     if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2)     if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)     if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

43.     Under ERISA, fiduciaries who exercise discretionary authority or control over the selection of plan investments must act prudently and  solely in the interest of participants and beneficiaries of the plan.  Thus, "the duty to conduct an independent investigation into the merits of a particular   investment" is "the most basic of ERISA's investment fiduciary duties." *In re Unisys Savings  401(k) Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996).  As the Department of Labor explains,

> [T]o act prudently, a plan fiduciary must consider, among other factors, the availability, riskiness, and potential return of alternative investments for his or her plan. [Where an investment], if implemented, causes the plan to forego other investment opportunities, such investments would not be prudent if they provided a plan with less return, in comparison to risk, than comparable investments available to the plan, or if they involved a greater risk to the security of plan assets than other investments offering a similar return.

DOL Opinion 88-16A (1988).

44.     A fiduciary's duty of loyalty requires a fiduciary to act solely in the interest of plan

participants and beneficiaries. As the Department of Labor has warned:

> [T]he Department has construed the requirements that a fiduciary act solely in the interest of, and for the exclusive purpose of providing benefits to participants and beneficiaries, as prohibiting a fiduciary from subordinating the interests of participants and beneficiaries in their retirement income to unrelated objectives. In other words, in deciding whether and to what extent to invest in a particular investment, or to make a particular fund available as a designated investment alternative, a fiduciary must ordinarily consider only factors relating to the interests of plan participants and beneficiaries in their retirement income. A decision to make an investment, or to designate an investment alternative, may not be influenced by non-economic factors unless the investment ultimately chosen for the plan, when judged solely on the basis of its economic value, would be equal to or superior to alternative available investments.

DOL Opinion 98-04A (1998); *see also* DOL Opinion 88-16A (1988).

45.     In a separate publication, the Department of Labor writes:

> The Federal law governing private-sector plan, the Employee Retirement Income Security Act (ERISA), requires that those responsible for managing plan -- referred to as fiduciaries -- carry out their responsibilities prudently and solely in the interest of the plan's participants and beneficiaries. Among other duties, fiduciaries have a responsibility to ensure that the services provided to their plan are necessary and that the cost of those services is reasonable.
>
> * * *
>
> Plan fees and expenses are important considerations for all types of plans. As a plan fiduciary, you have an obligation under ERISA to prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to your plan. Understanding and evaluating plan fees and expenses associated with plan investments, investment options, and services are an important part of a fiduciary's responsibility. This responsibility is

ongoing. After careful evaluation  during the initial selection, you will want to monitor plan fees and expenses to determine whether they continue to be reasonable in light of the services  provided.

* * *

By far the largest component of plan fees and expenses is associated with  managing plan investments. Fees for investment management and other related  services generally are assessed as a percentage of assets invested. Employers  should pay attention to these fees. They are paid in the form of an indirect charge  against the participant's account or the plan because they are deducted directly  from investment returns. Net total return is the return after these fees have been  deducted. For this reason, these fees, which are not specifically identified on  statements of investments, may not be immediately apparent to employers.

*Understanding Plan Fees and Expenses*, U.S. Dep't of Labor Employee Benefits  Security Admin.

(Dec. 2011), http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html.

46.    ERISA prohibits certain transactions with plans involving parties in interest and fiduciaries because of their significant potential for and risk of abuse. Specifically, ERISA § 406 provides in relevant part:

**(a)    Transactions Between Plan and Party in Interest.**—Except as provided in  section 408:

(1)    A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

(A)  sale or exchange, or leasing, of any property between the plan and a party in interest;

(B)  lending of money or other extension of credit between the plan and a party in interest;

(C)  furnishing of goods, services, or facilities between the plan and a party in interest;

(D)  transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; or

(E)  acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 407(a).

17

(2)   No fiduciary who has authority or discretion to control or manage the assets of a plan shall permit the plan to hold any employer security or employer real property if he knows or should know that holding such security or real property violates section 407(a).

**(b)   Transactions Between Plan and Fiduciary.—**A fiduciary with respect to a plan shall not—

(1)   deal with the assets of the plan in his own interest or for his own account,

(2)   in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3)   receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106.

47.   ERISA § 409, 29 U.S.C. § 1109, provides, inter alia, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA § 409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

48.   ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan fiduciary, participant, beneficiary, or the Secretary of Labor to bring a suit for appropriate relief under ERISA § 409.

## DEFENDANTS' FAITHLESS, SELF-INTERESTED CONDUCT

49.     As explained above, WR FINANCIAL and the Administrative Committee caused the 401(k) Plan to select the investment opportunities made available to the 401(k) Plan participants.

50.     As explained above, the 401(k) Plan participants are strictly limited to allocating their 401(k) Plan contributions among these limited available investment options.

51.     During the Class Period, more than 97% of the investment "opportunities" made available to the 401(k) Plan participants were established and managed by WR FINANCIAL or its affiliates.  Based on information available to the Plaintiff at the time of filing, it appears that, during the entirety of the six-year Class Period, only one unaffiliated investment option was ever offered to 401(k) Plan participants, and that option was not offered until sometime after June 30, 2016.  Between the start of the Class Period and June 30, 2016, not one outside investment opportunity was ever made available.

52.     As of December 31, 2011, according to the 401(k) Plan's 5500 series filings with the United States Department of Labor, the 401(k) Plan offered the following investment options, all of which were established and managed by WR FINANCIAL or its affiliates:

| Fund Symbol | Name of Fund |
| --- | --- |
| WDR | Waddell & Reed Finl Inc. Class A Stock Fund |
| IVAEX | IVY Asset Strategy Fund Class I |
| INOIX | IVY Asset Strategy New Opportunities Fund Class I |
| IVBIX | IVY Bond Fund Class I |
| IVAIX | IVY Capital Appreciation Fund Class I |
| ICIEX | IVY Core Equity Fund Class I |
| ICVIX | IVY Cundill Global Value Fund Class I |
| IEOIX | IVY European Opportunities Fund Class I |
| IGNIX | IVY Global Natural Resources Fund Clas I |

| IVHIX | IVY High Income Fund Class I |
| IIBIX | IVY International Balanced Class I |
| ICEIX | IVY International Core Equity Fund Class I |
| IGIIX | IVY International Growth Fund Class I |
| IYGIX | IVY Large Cap Growth Fund Class I |
| ILTIX | IVY Limited-Term Bond Fund Class I |
| IGWIX | IVY Micro Cap Growth Fund Class I |
| KYMIX | IVY Mid Cap Growth Fund Class I |
| IMFIX | IVY Mortgage Securities Fund Class I |
| IPOIX | IVY Pacific Opportunities Fund Class I |
| IREIX | IVY Real Estate Securities Fund Class I |
| ISTIX | IVY Science & Technology Fund Class I |
| IYSIX | IVY Small Cap Growth Fund Class I |
| IVVIX | IVY Small Cap Value Fund Class I |
| WACYX | Waddell & Reed Advisors Continental Income Fund Class Y |
| WAAYX | Waddell & Reed Advisors Accumulative Fund Class Y #737 |
| WYASX | Waddell & Reed Advisors Asset Strategy Fund Class Y #785 |
| WYABX | Waddell & Reed Advisors Bond Fund Class Y #738 |
| UNCXX | Waddell & Reed Advisors Cash Management Fund Class A #750 |
| UNIYX | Waddell & Reed Advisors Core Investment Fund Class Y #735 |
| WDVYX | Waddell & Reed Advisors Dividend Opportunities Fund Class Y #726 |
| WEGYX | Waddell & Reed Advisors Energy Fund Class Y #793 |
| WGBYX | Waddell & Reed Advisors Global Bond Fund Class Y #749 |
| WGVYX | Waddell & Reed Advisors Government Securities Fund Class Y #754 |
| WYHIX | Waddell & Reed Advisors High Income Fund Class Y #746 |
| WAIYX | Waddell & Reed Advisors International Growth Fund CL Y |
| UNEYX | Waddell & Reed Advisors New Concepts Fund Class Y #748 |
| USTFX | Waddell & Reed Advisors Science and Technology Fund Class y #736 |
| WRSYX | Waddell & Reed Advisors Small Cap Fund CL- Y #777 |
| WVAYX | Waddell & Reed Advisors Value Fund Class Y #772 |
| WAVYX | Waddell & Reed Advisors Vanguard Fund CL Y #747 |

53.     According to the 401(k) Plan's annual 5500 series filings with the United States Department of Labor from 2009 through 2016 (the most recent 5500 form that is publicly available), all of the 401(k) Plan's investment options (except one outside investment option added sometime after June 30, 2016) are managed by WR FINANCIAL (or, in the case of stock fund,

20

was a direct investment in WR FINANCIAL and thus also conflicted) or an affiliated entity. Other than the single additional outside investment option made available sometime after June 30, 2016, Defendants did not allow 401(k) Plan participants to invest in any other outside investment options during the entirety of the Class Period.

54.     Upon information and belief, the following chart accurately reflects the percentage of investment options that were proprietary WR FINANCIAL-affiliated investment options during each identified 401(k) Plan year:

| Year | Total # of Investment Options | Waddell & Reed Affiliated Investment Options | % of Waddell & Reed - Affiliated Investment Options | Total Plan Assets as of year-end | Plan Assets in Waddell & Reed Affiliated Investment Options as of year-end | % of Plan Assets in Waddell & Reed Affiliated Investment Options as of year-end |
|---|---|---|---|---|---|---|
| 2009 | 39 | 39 | 100% | $119,133,715 | $119,133,715 | 100% |
| 2010 | 40 | 40 | 100% | $142,989,799 | $142,989,799 | 100% |
| 2011 | 38 | 38 | 100% | $138,645,999 | $138,645,999 | 100% |
| 2012 | 39 | 39 | 100% | $165,118,239 | $165,118,239 | 100% |
| 2013 | 41 | 41 | 100% | $205,858,831 | $205,858,831 | 100% |
| 2014 | 47 | 47 | 100% | $213,461,885 | $213,461,885 | 100% |
| 2015 | 49 | 49 | 100% | $201,949,399 | $201,949,399 | 100% |
| 2016 | 38 | 37 | 97% | $190,375,417 | $178,586,648 | 93.8% |
| April 2017 | 34 | 33 | 97% | Not publicly available | Not publicly available | Not publicly available |

55.     Because nearly all of the investment options Defendants made available to 401(k) Plan participants were established and managed by WR FINANCIAL or its affiliates, Defendants

caused the 401(k) Plan to pay its own Sponsor and Administrator, WR FINANCIAL, or its affiliates millions of dollars in investment management fees during the Class Period.

56.     Upon information and belief, Plaintiff estimates that Defendants caused the 401(k) Plan to pay its own Sponsor and Administrator, WR FINANCIAL, or its affiliates over $7 million dollars in fees (excluding estimated 2016 and 2017 fees due to lack of publicly available information) during  the Class Period, which has correspondingly reduced the earnings that would have accrued to participants.

57.     Instead of choosing as investment options products that were established and managed by WR FINANCIAL or its affiliates, Defendants could easily have selected comparable investment products from unaffiliated companies that cost less and performed better than the proprietary "Waddell & Reed" and "Ivy" branded investment products to which Defendants limited the 401(k) Plan participants.

58.     The chart attached hereto as Exhibit C accurately reflects, by way of illustration, just some examples of the comparable investment products from unaffiliated companies that were costing less and performing better than the proprietary "Waddell & Reed" and "Ivy" branded investment products during the Class Period, as of December 31, 2015.  (Ex. C, Chart of Comparable Unaffiliated Funds with lower costs and better performance as of December 31, 2015.)

59.     Had Defendants established or followed a process for selecting and monitoring investment options that was not tainted by self-interest and prudently selected and regularly monitored and compared the investment options they made available to the 401(k) Plan participants to ensure that the costs and performance of such investment options compared favorably to other investment products, Defendants would have selected and periodically altered

the 401(k) Plan's investment options in favor of investment products such as the funds listed in the chart above that offered similar or superior performance at significantly less expense.

60.     Defendants acted in their own self-interest rather than in the interests of the 401(k) Plan and its participants in choosing their own proprietary funds for inclusion on the 401(k) Plan menu of investment options and thereby causing WR FINANCIAL and its affiliates to the reap and realize the reward of the investment fees paid by the 401(k) Plan.

61.     WR FINANCIAL has long admitted that increases in fees are in its best interests and that fee reductions can adversely impact its revenues and profitability:

> **Fee Pressures Could Reduce Our Revenues And Profitability.**   There is a trend toward lower fees in some segments of the investment management business. In addition, the SEC has adopted rules that are designed to improve mutual fund corporate governance, which could result in further downward pressure on investment advisory fees in the mutual fund industry. Accordingly, there can be no assurance that we will be able to maintain our current fee structure. Fee reductions on existing or future new business could have an adverse impact on our revenues and profitability.

(Ex. D, February 28, 2014 10-K filing with the Securities and Exchange Commission, at 15.)

62.     The interests of WR FINANCIAL and its affiliates in receiving fees and not having those fees reduced is in direct conflict with the interests of the 401(k) Plan and its participants.

63.     The fees charged to 401(k) Plan participants for their investments were and continue to be well in excess of the fees charged by unaffiliated companies for comparable mutual funds and investment products, and the performance achieved by 401(k) Plan participants for their investments were and continue to be worse than the performance achieved by unaffiliated companies for comparable mutual funds and investment products.

64.     According to WR FINANCIAL's own February 24, 2017 10-K filing with the Securities and Exchange Commission, the "trend" toward lower fees has "accelerat[ed]," and WR

FINANCIAL has experienced increased pressure to reduce fees from competitors and investors and is vulnerable to such pressures:

> There is an accelerating trend toward lower fees in some segments of the investment management business. The SEC has adopted rules that are designed to alter mutual fund corporate governance, which could result in further downward pressure on investment advisory fees in the mutual fund industry. Investors and clients are increasingly fee sensitive. Active management continues to experience pressure by increased flows to lower fee passive products. This trend will result in pressure on active management firms to reduce fees to compete with passive products. The DOL fiduciary standard could increase fee pressure as financial advisors may have more fee sensitivity given their new fiduciary role. In addition, competition could cause us to reduce the fees we charge for products and services. In the event that competitors charge lower fees for substantially similar products, we may be forced to compete on the basis of price in order to attract and retain customers. The investment management agreements with the Funds continue in effect from year to year only if such continuation is approved at least annually by the Funds' board of trustees. Periodic review of these advisory agreements could result in a reduction in investment management fee revenues received from the Funds. Accordingly, there can be no assurance that we will be able to maintain our current fee structure. Fee reductions on existing or future new business could reduce our operating revenues and may adversely affect our business future revenue and profitability.

(Ex. E, February 24, 2017 10-K filing with the Securities and Exchange Commission, at 13.)

65.     Upon information and belief, Defendants never exerted against WR FINANCIAL and its affiliates similar pressures on behalf of the 401(k) Plan participants to reduce fees and never threatened to change investment products if the fees associated with "Waddell & Reed" and "Ivy" brand of investment products made available to the 401(k) Plan participants were not reduced.

66.     Further, by including during certain years in the class period all of both their more-expensive "Waddell & Reed" brand investment products and their less-expensive "Ivy" brand investment products in the 401(k) Plan, Defendants exposed the 401(k) Plan participants to false and more expensive choices, because some of the more-expensive "Waddell & Reed" and less-expensive "Ivy" investment products were actually essentially the same investment with

duplicative investment holdings.  That is, a number of the investment options were duplicative in content but not cost – i.e., the same investment product with the same holdings cost more when branded one way ("Waddell & Reed") than when branded another way ("Ivy").

67.     The following chart as of the end of the 2015 plan year illustrates the additional basis points costs for these duplicative fund holdings of the 401(k) Plan during the 2015 plan year alone:

| Ivy-brand product in 401(k) Plan | Duplicative W&R-brand product in Plan | Ivy cost | W&R cost | Differential |
|---|---|---|---|---|
| Ivy Balanced R6 | Waddell & Reed Continental Inc Y | 0.70% | 0.87% | 17 basis points |
| Ivy Energy R6 | Waddell & Reed Energy Y | 0.93% | 1.09% | 16 basis points |
| Ivy Global Growth R6 | Waddell & Reed Global Growth Y | 0.95% | 1.07% | 12 basis points |
| Ivy High Income R6 | Waddell & Reed High-Income Y | 0.54% | 0.74% | 20 basis points |
| Ivy Dividend Opportunities R6 | Waddell & Reed Dividend Opps Y | 0.79% | 0.90% | 11 basis points |
| Ivy Value R6 | Waddell & Reed Value Y | 0.79% | 0.90% | 11 basis points |
| Ivy Mid Cap Growth R6 | Waddell & Reed New Concepts Y | 0.84% | 1.02% | 18 basis points |
| Ivy Small Cap Growth R6 | Waddell & Reed Small Cap Y | 0.90% | 1.05% | 15 basis points |
| Ivy Science and Technology R6 | Waddell & Reed Science & Tech Y | 0.82% | 0.99% | 17 basis points |
| Ivy Asset Strategy R6 | Waddell & Reed Asset Strategy Y | 0.59% | 0.82% | 23 basis points |
| Ivy Global Bond R6 | Waddell & Reed Global Bond Y | 0.70% | 0.82% | 12 basis points |

68.     Unnecessary duplication in investment funds existed through most of the Class Period.  Upon information and belief, for the year of 2015 alone, the annualized additional and unnecessary cost to the 401(k) Plan as a result of Defendants providing participants this false

choice to invest in the more expensive, duplicative "Waddell & Reed" brand investment products was more than $100,000.

69.     Defendants have admitted that this duplication occurred.  According to a February 10, 2017 New York Times Article entitled "Is Your Financial Adviser Acting in Your Best Interest?" that utilized the "Ivy" and "Waddell & Reed" brand products as examples of this problematic duplication-at-higher-costs funds within the financial services industry, Defendants' representative essentially admitted that this duplication-at-higher-costs between the "Ivy" and "Waddell & Reed" brand products existed, including "the same portfolio managers" and "almost identical holdings."  (Ex. F, Paul Sullivan, *Is Your Financial Adviser Acting in Your Best Interest?*, N.Y. Times (Feb. 10, 2017), https://www.nytimes.com/2017/02/10/your-money/is-your-financial-adviser-acting-in-your-best-interest.html (commenting on the "abysmal performance" of duplicative Ivy Asset Strategy and Waddell & Reed Asset Strategy funds and quoting Mr. Roger Hoadley, "director of communications").

70.     Despite knowing that there was this duplication and resulting additional expense from including the more-expensive and duplicative "Waddell & Reed"-brand funds in the 401(k) Plan's investment options, Defendants did nothing about this problem until some measure of corrective action was taken on or about June 15, 2016.

71.     Effective June 15, 2016, Defendants did finally eliminate some of the duplicative investment options and false choices and pool some of the investment funds into collective investment trusts or "CITs" with lower fees, as 401(k) Plan participants received a May 16, 2016 announcement regarding "401(k) Plan Investment Option Changes" identifying certain funds that were being "Removed as an Investment Option," with monies in those funds being transferred to

an allegedly corollary "Designated Replacement Investment Option."  (Ex. G, May 16, 2016 notice to 401(k) Plan participants regarding "401(k) Plan Investment Option Changes" effective June 15, 2016.)

72.    However, even when pooling investment funds into CITs to ostensibly lower costs, Defendants chose as the investment products in the CITs only investment products that were managed by WR FINANCIAL or its affiliates.

73.    Furthermore, Defendants should have the reduced the number of options on the 401(k) Plan menu much earlier (in addition to including outside fund options).  During the Class Period, the 401(k) Plan had double or more the number of investment options of comparable plans in the $100 million to $250 million asset range:

| Year ending: | Total Number of Plan Investment Options per WR FINANCIAL 401(K) Plan Form 5500 (12/31/2016 Participant Statement in case of 2016) | Total Number of Plan Investment Options in Comparable Plans -- Based on The BrightScope/ICI Defined Contribution Plan Profile:  A Close Look at 401(k) Plans, 2014. San Diego, CA: BrightScope and Washington, DC: Investment Company Institute at page 32 -- Available at www.ici.org/pdf/ppr_16_dcplan_profit_401k.pdf |
|---|---|---|
| 2011 | 38 | 19 |
| 2012 | 39 | 17 |
| 2013 | 41 | 18 |
| 2014 | 47 | 18 |
| 2015 | 49 | Not publicly available |
| 2016 | 38 | Not publicly available |

74.    The 401(k) Plan also had multiple options in many asset classes.  By failing to concentrate assets in each asset class (e.g., large cap equities, mid-cap equities, small-cap equities, international, balanced, fixed income, etc.) so as to qualify for investment funds that had lower fees and leverage plan assets to drive down fees, Defendants failed to act prudently.  For example, as of 12/31/2015, the Vanguard Balanced Index I fund had an expense ratio of 8 basis points, but

required a $5,000,000 minimum investment.   Had Defendants had a prudent process in place, they could have consolidated the $4 million in Waddell & Reed Continental Inc Y (expense ratio of 87 basis points) and the $3.7 million Ivy Balanced R6 (expense ratio of 70 basis points) and invested those assets in the comparable Vanguard Balanced Index I fund, lowering costs to only 8 basis points.   Instead, when Defendants ultimately did choose to consolidate these funds in or around June 15, 2016, the fiduciaries made a self-interested decision to consolidate all of the assets into the Ivy Balanced R6 fund, thereby continuing to earn substantial fees over the Vanguard Balanced Index I alternative.   By including all of both their "Waddell & Reed" and their "Ivy" brand of investment products in the 401(k) Plan rather than selecting just one appropriate outside fund in each asset class, Defendants reduced the 401(k) Plan's leverage and ability to avail itself of economies of scale and qualify or negotiate (if there had actually been any due diligence and negotiation by Defendants) for lower-cost share class non-proprietary funds or lower fees from non-proprietary investment providers.

75.     Upon information and belief, one of the reasons Defendants selected as 401(k) Plan investment options funds established and managed by WR FINANCIAL or its affiliates was to either "seed" new "Waddell & Reed" or "Ivy" investment products with 401(k) Plan monies or use 401(k) Plan monies to bolster the dollar value of holdings in certain "Waddell & Reed" or "Ivy" investment products.

76.     In addition to the foregoing, for those 401(k) Plan participants who failed to make a timely investment election, their account was invested in accordance with the 401(k) Plan's default investment option, or Qualified Default Investment Alternative ("QDIA").   According to the SPD, the Administrative Committee selected the QDIA investment option and "review[ed] the

performance of the fund on at least an annual basis and will make changes as it deems necessary." (Ex. A, SPD, at 14-15.)  The QDIA investment option selected by the Administrative Committee was always an investment option managed by WR FINANCIAL or its affiliates; the Administrative Committee never selected an outside investment option as the QDIA investment option and, upon information and belief, never even considered doing so.

### CLASS ALLEGATIONS

77.     Plaintiff bring this action as a class action pursuant to Rule 23 of the Federal  Rules of Civil Procedure on behalf of a class defined as:

> All participants in the Waddell & Reed Financial, Inc. Section 401(k) and Thrift Plan from  June  23,  2011  to  the  present.  Excluded  from  the  class  are  Defendants, Defendants' beneficiaries,  and Defendants' immediate families.

78.     Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1), (b)(2), and/or (b)(3).

79.     The class satisfies the numerosity requirement because it is composed of thousands of persons, in numerous locations. The 401(k) Plan together had more than 1,000 participants and beneficiaries in every year of the Class Period, all of whom suffered from the limited investment options and  excessive and improper fees alleged herein. The number of class members is so large that joinder  of all its members is impracticable.

80.     There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

- •      Whether  Defendants  were  fiduciaries  responsible  for  monitoring  and making  decisions with respect to the investments in the 401(k) Plan and services for the 401(k) Plan;

- Whether Defendants breached their fiduciary duties to the 401(k) Plan by causing the 401(k) Plan to invest their assets in WR FINANCIAL and affiliated investment funds;

- Whether the investment decisions made by Defendants were solely in the interests of 401(k) Plan participants and beneficiaries;

- Whether the 401(k) Plan suffered losses as a result of Defendants' fiduciary breaches;

- Whether Defendants caused the 401(k) Plan to engage in prohibited transactions;

- Whether monies received and retained by a Defendant were 401(k) Plan assets;

- Whether an affirmative defense to a prohibited transaction claim applies and can be satisfied by Defendants; and

- Whether Defendants' acts proximately caused losses to the 401(k) Plan and, if so, the appropriate relief to which Plaintiff, on behalf of the 401(k) Plan and the Class, are entitled.

81.    Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff's claims, and the claims of all Class members, arise out of the same conduct, policies and practices of Defendants as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct.

82.    Plaintiff will fairly and adequately represent the Class and have retained counsel competent in the prosecution of ERISA class action litigation. Plaintiff has no interests antagonistic to those of other members of the Class. Plaintiff is committed to the vigorous prosecution of this action and anticipates no difficulty in the management of this litigation as a class action.

83.    Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing

incompatible standards of conduct for Defendants.  Class action status also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

84.     In the alternative, certification under Rule 23(b)(2) is warranted because Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

85.     In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### Disloyal Conduct in Connection with Investments

86.     Plaintiff repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

87.     As explained above, Defendants are responsible for selecting, monitoring,  and removing investment options in the 401(k) Plan.

88.     As explained above, Defendants caused the 401(k) Plan to invest hundreds of millions of dollars in investment options managed by WR FINANCIAL and its affiliates, favoring their proprietary investment options over outside investment options.

89.     As explained above, WR FINANCIAL and its affiliates collected excessive and unnecessary fees from these investment arrangements.

90.     By the conduct and omissions described above, Defendants failed to discharge their duties with respect to the 401(k) Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the 401(k) Plan, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

91.     Defendants failed to discharge their duties with respect to the 401(k) Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

92.     As a direct and proximate result of these breaches of fiduciary duties, the 401(k) Plan and their participants have paid WR FINANCIAL, directly and indirectly, substantial excess investment management and other fund-related fees during the Class Period, and suffered lost-opportunity costs which continue to accrue, for which Defendants are jointly and severally liable pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a)(2), 29 U.S.C § 1132(a)(2).

## SECOND CLAIM FOR RELIEF

### Prohibited Transactions

93.     Plaintiff repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

94.     As explained above, Defendants are fiduciaries and parties in interest to the 401(k) Plan.

95.     Defendants caused the 401(k) Plan to engage in a prohibited transaction under ERISA with each payment by the 401(k) Plan of fees to WR FINANCIAL in connection with the 401(k) Plan's investment in a WR FINANCIAL-affiliated investment option.

96.     By the conduct and omissions described above, Defendants failed to discharge their duties with respect to the 401(k) Plan:

   a.     By causing the 401(k) Plan to engage in transactions that they knew or should have known constitute direct or indirect transfers of the 401(k) Plan's assets to, or use of the 401(k) Plan's assets by or for the benefit of, parties in interest, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

   b.     By causing the 401(k) Plan to engage in the above conduct and omissions, in which a fiduciary to the 401(k) Plan dealt with the assets of the 401(k) Plan in its own interest or for its own account in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

   c.     By causing the 401(k) Plan to engage in the above conduct and omissions, in which a fiduciary to the 401(k) Plan, in its individual or in any other capacity, acted on behalf of a party whose interests were adverse to the interests of the 401(k) Plan or the interests of its participants or beneficiaries, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

97.     Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Defendants are liable to disgorge all fees received from the 401(k) Plan, directly or

indirectly, and profits thereon, and restore all losses suffered by the  401(k) Plan caused by their breaches of duty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.     A declaration that Defendants breached their fiduciary duties under  ERISA § 404 and violated ERISA § 406 by causing the 401(k) Plan to engage in prohibited transactions;

B.     An order compelling the disgorgement of all fees paid and incurred, directly or indirectly, to WR FINANCIAL and its affiliates by the 401(k) Plan, including disgorgement of profits thereon;

C.     An order compelling Defendants to restore all losses to the 401(k) Plan arising from Defendants' violations of ERISA, including lost-opportunity costs;

D.     An order granting equitable restitution and other appropriate equitable monetary relief against Defendants;

E.     Such other equitable or remedial relief as may be appropriate, including the permanent removal of Defendants from any positions of trust with respect to the 401(k) Plan, the appointment of independent fiduciaries to administer the 401(k) Plan, and rescission of the 401(k) Plan's  investments in WR FINANCIAL and affiliated entities' funds;

F.     An order certifying this action as a class action, designating the Class to receive  the amounts restored or disgorged to the 401(k) Plan, and imposing a constructive trust for distribution of those amounts to the extent required by law;

G.     An order enjoining Defendants collectively from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

34

H.     An order awarding Plaintiff and the Class their attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or the Common Fund doctrine, and post-judgment interest; and

I.     An order awarding such other and further relief as the Court deems equitable and just.

DATED this 7th day of August, 2017.

FOULSTON SIEFKIN LLP

By:  */s/ Scott C. Nehrbass*
       Scott C. Nehrbass, KS #16285
32 Corporate Woods, Suite 600
9225 Indian Creek Parkway
Overland Park, KS  66210-2000
(913) 253-2144
(866) 347-1472 FAX
Email:  snehrbass@foulston.com

ATTORNEYS FOR PLAINTIFF