## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**STACY SCHAPKER,**

   **Plaintiff,**

   **v.**          **Case No. 17-CV-2365-JAR-JPO**

**WADDELL & REED FINANCIAL, INC., et al.,**

   **Defendants.**

## MEMORANDUM AND ORDER

   Plaintiff brings two claims against Waddell & Reed Financial, Inc. and other Defendants under the Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Specifically, she alleges Defendants breached their fiduciary duties and engaged in prohibited transactions in relation to their management of the Waddell & Reed Financial, Inc. Section 401(k) and Thrift Plan.  This matter comes before the Court on Defendants' Motion to Dismiss the Second Amended Complaint (Doc. 37).  The matter is fully briefed and the Court is prepared to rule.[1]  For the reasons explained below, the Court denies Defendants' motion to dismiss.

## I.  Legal Standard

   To survive a motion to dismiss for failure to state a claim, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[2]  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable

---

[1]The parties have filed notices of supplemental authority and responses, which the Court has considered. *See* Docs. 47–51.

[2]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

likelihood of mustering factual support for *these* claims."[3]  The plausibility standard does not

require a showing of probability that "a defendant has acted unlawfully,"[4] but requires more than

"a sheer possibility."[5]

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*[6] seeks a middle

ground between heightened fact pleading and "allowing complaints that are no more than 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court

stated 'will not do.'"[7]  *Twombly* does not change other principles, such as that a court must

accept all factual allegations as true and may not dismiss on the ground that it appears unlikely

the allegations can be proven.[8]

The Supreme Court has explained the analysis as a two-step process.  For purposes of a

motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but]

we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[9]  Thus,

the court must first determine if the allegations are factual and entitled to an assumption of truth,

or merely legal conclusions that are not entitled to an assumption of truth.[10]  Second, the court

must determine whether the factual allegations, when assumed true, "plausibly give rise to an

entitlement to relief."[11]  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

---

[3]*Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[4]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5]*Id.*

[6]550 U.S. 544 (2007).

[7]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[8]*Id.* (citing *Twombly*, 550 U.S. at 556).

[9]*Iqbal*, 556 U.S. at 678.

[10]*Id.* at 678–79.

[11]*Id.* at 679.

misconduct alleged."[12]

## II.     Factual Allegations

The following facts are drawn from Plaintiff's Second Amended Complaint; the well-pleaded facts alleged therein are assumed true, as required on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[13]  This case arises out of Defendants' administration of the Waddell & Reed Financial, Inc. ("WR Financial") Section 401(k) and Thrift Plan (the "Plan").  Defendants consist of WR Financial (an investment management and financial planning services company), the Board of Directors of WR Financial, the Administrative Committee of the Plan, and thirteen individual members of the Administrative and Compensation Committees of the Plan.  Plaintiff Stacy Schapker, a participant in the Plan, alleges her claims on behalf of a putative class of all participants in the Plan during the period from June 23, 2011 through the present ("Class Period").

The Plan is a "defined contribution 401(k) Plan" or "individual account 401(k) Plan" within the meaning of ERISA.  The Plan is funded by participants' voluntary tax-deferred contributions as well as employer contributions.  Participants in the plan can direct the investment of all assets allocated to their individual accounts into the investment options offered by the Plan, and the returns on those investments are credited to each participant's account.  The Plan offers employees a menu of investment options that consist of pooled investment products, which include mutual funds, collective investment trusts, and separate accounts.  Although many 401(k) plans provide employees the option of opening a self-directed brokerage account as an alternative to the menu of investment products, the Plan at issue here did not provide this option.

---

[12]*Id.* at 678.

[13] *Twombly*, 550 U.S. at 545.

Within each of the WR Financial funds or collective investment trusts within the Plan, management fees are paid to WR Financial or one of its affiliates.

Defendants WR Financial and the Administrative Committee selected the investment opportunities made available to the Plan participants.  During the Class Period, more than 97% of the investment opportunities made available to the Plan participants were established and managed by WR Financial or its affiliates.  Only one unaffiliated investment option—out of dozens of funds offered each year—was ever offered to Plan participants, and that option was not offered until sometime after June 30, 2016.  Because nearly all the investment options Defendants made available to Plan participants were established and managed by WR Financial or its affiliates, Defendants caused the Plan to pay its own Sponsor and Administrator, WR Financial, or its affiliates more than $7 million in investment management fees during the Class Period.  These fees reduced the earnings that would have accrued to the Plan participants.

The fees charged to Plan participants for their investments were and continue to be in excess of the fees typically charged by unaffiliated companies for comparable mutual funds and products, and the performance levels of the investment options within the Plan were and continue to be worse than the performance achieved by unaffiliated companies for comparable mutual funds and investment products.  Defendants could have selected comparable investment products from unaffiliated companies that cost less and performed better than the proprietary "Waddell & Reed" and "Ivy" branded investment products to which Defendants limited the Plan participants.  WR Financial explained in filings to the United States Securities and Exchange Commission that it was facing pressure to reduce fees for certain active management investment products based on "an accelerating trend toward lower fees in some segments of the investment

management business."[14]  However, Defendants never threatened to change investment products if the fees associated with "Waddell & Reed" and "Ivy" brand products made available to the Plan participants were not reduced.

Additionally, Defendants included in the Plan both the more-expensive "Waddell & Reed" brand investment products and the less-expensive "Ivy" brand investment products.  Some of these products were essentially the same investment holdings.  Thus, several of the investment options were duplicative in content, but not in cost—i.e., the same investment product with the same holdings cost more when branded one way ("Waddell & Reed") than when branded another way ("Ivy").  These duplicative investment funds existed through most of the Class Period, until June 2016, when Defendants eliminated some of the duplicative investment options and pooled some of the investment funds into collective investment trusts with lower fees.  Plaintiff estimates that the duplication in investment funds resulted in an additional cost to the Plan of more than $100,000.

The Plan also had multiple investment options in many asset classes, and had double or more the number of investment options of comparable plans with similar assets.  Defendants did not concentrate assets in each asset class to qualify for investment funds that had lower fees and to leverage plan assets to drive down fees.  For example, Defendants could have consolidated the $4 million in Waddell & Reed Continental Inc Y (expense ratio of 87 basis points) and the $3.7 million in Ivy Balanced R6 (expense ratio of 70 basis points) funds and invested those assets in the Vanguard Balanced Index I fund, lowering costs to only eight basis points.  Instead, Defendants consolidated the assets of these funds into the Ivy Balanced R6 fund in June 2016.

---

[14]Doc. 15 at 24.

One of the reasons Defendants selected the funds established and managed by WR Financial or its affiliates for the Plan was to either "seed" new "Waddell & Reed" or "Ivy" investment products with Plan monies or use Plan monies to bolster the dollar value of holdings in these products.  For Plan participants who failed to timely elect their investment options, the Administrative Committee selected a default option, which was always an investment option managed by WR Financial or its affiliates.  The Administrative Committee never selected an outside investment option as the default investment option.

## III.   Discussion

Defendants argue that Plaintiff's claims must be dismissed because they are untimely under the three-year ERISA statute of limitations and because they otherwise fail to state a claim. Plaintiff responds that her claims are timely and that she states claims for breach of fiduciary duties and prohibited transactions.  The Court considers Defendants' arguments in turn.

### A.    Statute of Limitations

Defendants argue Plaintiff's claims are subject to the three-year statute of limitations under 29 U.S.C. § 1113(2).  Section 1113 provides that an ERISA suit must be brought within the earlier of

(1) Six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
(2) Three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.[15]

Defendants argue that Plaintiff had actual knowledge of her claims more than three years before filing the instant action, and thus her claims are barred under § 1113(2).  Defendants also argue that the "continuing violation theory," which tolls or extends the statute of limitations when the

---

[15]29 U.S.C. § 1113(2).

alleged violation is "continuing in nature," does not apply under § 1113(2) when the plaintiff has knowledge of any breach or violation giving rise to her claim.  Plaintiff argues she did not have actual knowledge of her claims more than three years before filing suit.  Additionally, she argues that the "continuing violation theory" applies to her prohibited transaction claims.  Thus, she contends that the six-year statute of limitations period under § 1113(1) applies, rather than the three-year actual knowledge period under § 1113(2), and that her claims did not accrue before this period.

### 1.    Breach of Fiduciary Duty Claim

The Tenth Circuit has not yet defined the phrase "actual knowledge" for purposes of the three-year limitations period under § 1113(2).[16]  The Circuit has, however, acknowledged a split of authority as to this phrase, between "those [courts] that require some understanding that the conduct is lawful under ERISA and those that merely require knowledge of the conduct itself."[17]  The Seventh Circuit has held that a plaintiff has actual knowledge of a fiduciary breach claim when the plaintiff has "knowledge of 'the essential facts of the transaction or conduct constituting the violation.'"[18]  To trigger the running of the three-year clock under this definition, a plaintiff need not have knowledge "of every last detail of a transaction, or knowledge of its illegality," but rather must have knowledge of "all material facts."[19]  "On the other hand, the Third Circuit has held that the plaintiff must not only know of events that constitute the breach, but also know that those events support a claim under ERISA."[20]  In the context of complex

---

[16]*Mid-South Iron Workers Welfare Plan v. Harmon*, 645 F. App'x 661, 665 (10th Cir. 2016).

[17]*Id.*

[18]*Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 679 (7th Cir. 2014) (quoting *Rush v. Martin Petersen Co.*, 83 F.3d 894, 896 (7th Cir. 1996)); *Edes v. Verizon Cmmc'ns, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005) (citation omitted).

[19]*Fish*, 749 F.3d at 679 (quoting *Rush*, 83 F.3d at 954).

[20]*Mid-South*, 645 F. App'x at 665.

transactions, it may take some time for a plaintiff to gain actual knowledge of a violation, and "mere knowledge of facts indicating that 'something was awry'" may not be sufficient to begin the limitations period.[21]

As Plaintiff notes, several courts have held that when a plaintiff pleads a fiduciary breach claim premised on a flawed process in selecting investment options—as opposed to a claim of excessive fees or underperformance of a specific investment product—the plaintiff "'must have been aware of the process utilized by [the fiduciary] in order to have had actual knowledge of the resulting breach of fiduciary duty.'"[22] This approach has been used even under the Seventh Circuit's more liberal definition of "actual knowledge."[23] Thus, the Court finds that under either definition of "actual knowledge," a plaintiff who pleads a process-based fiduciary breach claim must be aware of the process utilized by the fiduciary to have actual knowledge of her claim.[24]

Defendants argue that facts in Plaintiff's Second Amended Complaint, documents referenced therein, and documents of which the Court may take judicial notice show that Plaintiff had knowledge of "the essential facts of the transaction or conduct constituting the violation" more than three years before she filed her claims on June 23, 2017. Specifically,

---

[21]*Edes*, 417 F.3d at 142 (quoting *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992)).

[22]*Fish*, 749 F.3d at 681 (citing *Maher v. Strachan Shipping Co.*, 68 F.3d 951, 954 (5th Cir. 1995)); *Lorenz v. Safeway, Inc.*, 241 F. Supp. 3d 1005, 1016 (N.D. Cal. 2017); *Cassell v. Vanderbilt Univ.*, -- F. Supp. 3d --, No. 3:16-cv-02086, 2018 WL 305747, at *9 (M.D. Tenn. Jan. 5, 2018).

[23]*See Fish*, 749 F.3d at 681.

[24]Defendants cite *Muehlgay v. Citigroup Inc.*, 649 F. App'x 110 (2d Cir. 2016), in which the court held that the plaintiff's process-based claim premised on circumstantial allegations was "redundant and circular" because even assuming the lack of a prudent process, "any breach caused by the lack of a prudent process would trace back to the breaches that occurred prior to [three years before the complaint was filed], and thus would still be barred by the statute of limitations." *Id.* at 111. Defendants suggest that *Muehlgay* demonstrates that in the Second Circuit, even if Plaintiff brings a process-based claim, her actual knowledge dates back more than three years before the filing of her Complaint. *Muehlgay*, however, does not control the statute of limitation issue in this case. Although the court in *Muehlgay* explained how a breach may relate back to an original process used by a fiduciary, it did not explain how a plaintiff's *actual knowledge* of a process can relate back to a date before the plaintiff acquired such knowledge. The Seventh Circuit's approach more directly applies here.

Defendants point to Plaintiff's allegation in her Second Amended Complaint that the "5500 series filings with the United States Department of Labor from 2009 through 2016" made clear that "all of the 401(k) Plan's investment options (except one outside investment option added sometime after June 30, 2016) are managed by WR FINANCIAL."[25]  Defendants also attach as exhibits the 2011, 2013, and 2014 Summary Plan Description and Prospectuses ("SPDs"), the 404a-5 Disclosures for 2012 through 2014, and the Form 5500s for 2011 and 2012.[26] Defendants argue that these documents put Plaintiff on notice that the Plan consisted almost entirely of WR Financial-affiliated funds and the amount of the fees associated with those funds.

Plaintiff counters that she alleges a process-based fiduciary breach claim, and that the facts and documents Defendants cite do not reflect that she was aware of the *process* Defendants used to select the investment options more than three years before the filing of her claims. Additionally, she contends Defendants' exhibits are not appropriate for consideration at the motion to dismiss stage.  Accordingly, she argues her claims are not subject to the limitations period under § 1113(2).

As an initial matter, the Court finds that it may properly consider Defendants' exhibits containing the Plan's Form 5500 filings at this stage of the litigation.  In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference "if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[27] Plaintiff incorporated the Form 5500 filings into her Second Amended Complaint by reference,

---

[25]Doc. 15 at 20.

[26]Docs. 38-3, 38-4, 38-5, 38-10, 38-11, 38-16, 38-17, and 38-18.

[27]*Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

and the information contained in the documents—namely, information showing that nearly all of the Plan's funds were affiliated with WR Financial—is central to Plaintiff's fiduciary breach claim.  Thus, the Court will consider these documents.   However, because Plaintiff does not reference the SPDs or 404a-5 Disclosures, the Court declines to consider those documents at this stage.

Having considered Plaintiff's allegations and all properly submitted exhibits, the Court finds that Plaintiff's claims, as pled, are not subject to the limitations period under § 1113(2). Defendants cite two cases in which this Court and the Southern District of New York held that § 1113(2) barred the plaintiffs' fiduciary breach claims because the fiduciaries disclosed all information material to their claims more than three years before the plaintiffs filed their claims, including information that the 401(k) plans included proprietary investment funds and carried certain risks.[28]  Defendants argue that this case is analogous to those cases, because Defendants disclosed to Plaintiff and other Plan participants more than three years ago that the Plan consisted primarily of WR Financial-affiliated funds, and also disclosed the fees and performance of the funds through various documents.

The Court recognizes that the Form 5500 filings, as referenced in the Second Amended Complaint, disclosed that the Plan consisted nearly entirely of WR Financial-affiliated funds and disclosed the number of investments included in the Plan.  These facts, however, were not sufficient to give Plaintiff knowledge of "all material facts" of her fiduciary breach claim or to give her actual knowledge of the "conduct constituting a violation."[29]  As discussed more fully below, the Court finds that Plaintiff pleads a plausible process-based fiduciary breach claim.

---

[28]*Enneking v. Schmidt Builders Supply, Inc.*, 875 F. Supp. 2d 1274, 1283–84 (D. Kan. 2012); *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 418–420 (S.D.N.Y. 2008).

[29]*Fish*, 749 F.3d at 679 (quoting *Rush*, 83 F.3d at 896); *Edes*, 417 F.3d at 142 (citation omitted).

Accordingly, for the three-year limitation period to begin, Plaintiff must have acquired actual knowledge of the Defendants' process in selecting the funds.[30]  The allegations and documents Defendants cite do not show that Plaintiff had knowledge of Defendants' process at any time more than three years before she filed her Original Complaint on June 23, 2017.[31]  Accordingly, the Court finds that Plaintiff's claim is not barred by the statute of limitations under § 1113(2).

### 2. Prohibited Transaction Claim

Defendants argue that Plaintiff had actual knowledge of her prohibited transaction claim more than three years before the filing of her Original Complaint on June 23, 2017, and therefore her claim is barred by § 1113(2).  Defendants point to Plaintiff's allegation in her Second Amended Complaint that according to the Plan's "5500 series filings with the United States Department of Labor from 2009 through 2016 . . . all of the 401(k) Plan's investment options (except one outside investment option added sometime after June 30, 2016) are managed by WR FINANCIAL."[32]  Defendants attach to their motion several of the Plan's Form 5500 filings, including from 2011 and 2012, which state that "Plan investments include shares of mutual funds managed by Waddell & Reed Investment Management Company and Ivy Investment Management Company . . . Waddell & Reed Financial, Inc. and its affiliates are the sponsors, as defined by the Plan, and therefore, these transactions qualify as party in interest."[33]  Thus,

---

[30]*Fish*, 749 F.3d at 687 ("In the case of an ERISA plan that invokes a § 1108 exception to a § 1106 prohibition, the plaintiff does not have actual knowledge of an alleged violation until she knows that the exception does not apply."); *Lorenz v. Safeway*, 241 F. Supp. 3d 1005, 1016 (N.D. Cal. 2017) (citations omitted).

[31]Defendants suggest in a footnote in a supplemental filing that Plaintiff had actual knowledge of Defendants' decision-making process based on her allegation that "the only criteria (or virtually the only criteria)" used to select Plan investments was whether they were affiliated with WR Financial.  Doc. 50 at 1 n.1.  Although this allegation demonstrates that Plaintiff appears to have had knowledge of Defendants' process at the time she filed her Original Complaint, it does not demonstrate that she had this knowledge more than three years before she filed her Complaint.

[32]Doc. 15 at 20.

[33]Doc. 38-10 at 33.

Defendants argue that Plaintiff had actual knowledge of the investments at issue in Count 2 beginning in 2009 based on the Form 5500 filings.[34]

In *Fish v. GreatBanc Trust Co.*,[35] the Seventh Circuit explained that "[i]n the case of an ERISA plan that invokes a § 1108 exception to a § 1106 prohibition, the plaintiff does not have actual knowledge of an alleged violation until she knows that the exception does not apply."[36] Plaintiff argues that although the Form 5500 filings disclosed that the Plan included party-in-interest transactions, each filing stated that there were no "non-exempt transactions with any party-in-interest."[37]  Plaintiff contends that she "only recently gained knowledge suggesting that Defendants' Form 5500 was incorrect and that Defendants had, indeed, engaged in non-exempt, prohibited transactions."[38]

In their reply, Defendants cite *Brotherston v. Putnam Investments, LLC*, in which the District of Massachusetts found that the plaintiffs had actual knowledge of their prohibited transaction claims based on information they had regarding the prohibited transactions, even though the plaintiffs argued that they did not have "knowledge of facts negating possible exemptions."[39]  The court explained that plaintiffs need not have knowledge of facts negating possible affirmative defenses to have "actual knowledge" of claims.  Additionally, because the challenged transaction in *Brotherston* was "not so intricate as to impede the Plaintiffs from having actual knowledge," the Court found that § 1113(2) barred the plaintiffs' prohibited

---

[34]As with Plaintiff's fiduciary breach claim, the Court will consider the Form 5500 filings attached to Defendants' motion, which Plaintiff referenced in her Second Amended Complaint and which are central to her prohibited transaction claim. *See supra* Part III.A.1 at 8–9.

[35]749 F.3d 671 (7th Cir. 2014).

[36]*Id.* at 687–88.

[37]Doc. 38-10 at 14; Doc. 38-11 at 14; Doc. 15-2 at 14.

[38]Doc. 45 at 37.

[39]No. 15-13825, 2017 WL 1196648, at *11 (D. Mass. Mar. 30, 2017).

transaction claims.[40]  Defendants argue that the reasoning in *Brotherston* applies to this case because the alleged prohibited transactions are "not so intricate" as to impede Plaintiff's actual knowledge of her claims.[41]

Defendants have not shown that Plaintiff had actual knowledge of her prohibited transaction claims more than three years before the filing of her Original Complaint.  As Plaintiff notes, the Form 5500 filings stated that there were no non-exempt transactions with parties in interest involved in the Plan.  Plaintiff contends that she only recently learned that certain transactions were non-exempt, and Defendants point to no allegations in the Second Amended Complaint or facts in the exhibits the Court has considered that suggest otherwise.  And although the transactions may not have been exceedingly intricate and Plaintiff ostensibly understood that the Plan consisted nearly entirely of proprietary funds, Defendants do not explain how Plaintiff could have had actual knowledge of how any exemptions did or did not apply to the transactions involving parties in interest.  The Court finds Plaintiff was not on notice of her prohibited transaction claims until she learned that the exemptions did not apply.[42]  Defendants do not contend—and the Court is not persuaded—that Plaintiff gained this knowledge more than three years before the filing of her Original Complaint.  Accordingly, Plaintiff's prohibited transaction claim is not time-barred under § 1113(2).[43]

---

[40]*Id.*

[41]Doc. 38 at 28; Doc. 46 at 21–22.

[42]*See Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 687–88 (7th Cir. 2014).

[43]Defendants also argue that the "continuing violation theory," which construes each payment as a separate prohibited transaction for purposes of the statute of repose, does not save Plaintiff's claim from § 1113(2).  *See* Doc. 46 at 23 (arguing that continuing violation theory "only applies to an argument that ERISA's six-year statute of repose bars a plaintiff's claims—not the three-year 'actual knowledge' limitations period.").  Because the Court finds that § 1113(2) does not bar Plaintiff's prohibited transaction claim, the Court does not consider whether the "continuing violation theory" saves Plaintiff's claim from the statute of limitations.

B.     **Failure to State a Claim**

1.     **Fiduciary Breach Claim**

Defendants argue that Plaintiff fails to state plausible claims of breach of the fiduciary duties of prudence and loyalty.  29 U.S.C. § 1104(a)(1)(A) spells out the fiduciary duty of loyalty, and requires an ERISA fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and the beneficiaries and defraying reasonable expenses of administering the plan."  Section 1104(a)(1)(B) sets forth the fiduciary duty of prudence, and requires an ERISA fiduciary to act "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

Because the statute's prudent person standard is an objective one, the Court's inquiry into whether the duty was breached focuses "on the process by which [the fiduciary] makes its decisions rather than the results of those decisions."[44]  A plaintiff may survive a motion to dismiss by alleging facts that directly address the process by which the fiduciary manages a plan, or circumstantial factual allegations that lead the court to "reasonably 'infer from what is alleged that the process was flawed.'"[45]  A plaintiff alleging a claim of an imprudent or disloyal process through circumstantial factual allegations cannot avoid a motion to dismiss by simply alleging that better or cheaper investment opportunities were available at the time of the relevant

---

[44]*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (citing *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917–18 (8th Cir. 1994)); *Renfro v. Unisys Corp.*, 671 F.3d 314, 322 (3d Cir. 2011) (citation omitted).

[45]*PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (quoting *Braden*, 588 F.3d at 596).

decisions.[46]  Rather, the plaintiff must allege facts that lead to the reasonable inference that a

prudent fiduciary in like circumstances would have acted differently.[47]

Plaintiff concedes she does not directly allege facts regarding Defendants' process, but

she argues she alleges a plausible process-based claim premised on circumstantial factual

allegations.  She contends that in addition to selecting funds with excessive fees and

underperforming returns, Defendants also included duplicative WR and Ivy funds in the Plan and

used Plan assets to seed new WR-affiliated investment products.  Taken together, Plaintiff

argues, these allegations state a plausible claim of breach of Defendants' fiduciary duties.

Defendants contend that Plaintiff's fiduciary breach claim, which they argue amounts to a

claim of excessive fees and underperformance, fails to state a claim.  They argue that Plaintiff

cannot support her claim simply by alleging that the management fees associated with funds

Defendants selected were higher than those of other funds, or that the Plan funds underperformed

other funds in the marketplace.[48]  Defendants cite *Meiners v. Wells Fargo & Co.*,[49] in which the

court held that the plaintiff's fiduciary breach claim, premised on allegations that the 401(k) plan

invested in twelve proprietary funds with excessive fees, "merely allege[d] that [the defendant]

failed to invest in the cheapest fund available."[50]  Without pleading "something more," such as

allegations that the fees were excessive as compared to the average cost of similar sized plans or

that the fees were higher than the median fees for comparable funds, the court explained that the

---

[46]*Id.* (citing *Braden*, 588 F.3d at 596 n. 7); *Meiners v. Wells Fargo & Co.*, No. 16-3981(DSD/FLN), 2017 WL 2303968, at *3 (D. Minn. May 25, 2017) ("failure to invest in the cheapest fund available does not necessarily suggest a breach of fiduciary duty.").

[47]*PBGC*, 712 F.3d at 720.

[48]*Id.* at 705 (citation omitted); *Meiners*, 2017 WL 2303968, at *3.

[49]No. 16-3981(DSD/FLN), 2017 WL 2303968, at *3 (D. Minn. May 25, 2017).

[50]*Id.* at *3.

plaintiff's claim was not plausible.[51]  Although the plaintiff alleged that two non-proprietary funds were less expensive than the proprietary funds included in the plan, the court found that "[n]othing in the complaint suggests that the [two] funds are reliable comparators, offer similar services, or are of similar size, nor does it contain facts showing that the Wells Fargo funds are more expensive when compared to the market as a whole."[52]  Accordingly, the court dismissed the plaintiff's claim.[53]

Defendants argue that like in *Meiner*, Plaintiff is attempting to hold Defendants liable for failing to choose the cheapest or best-performing funds.  Furthermore, they contend that Plaintiff does not allege her comparator funds offer the same services as the Plan's funds or follow the same investment strategy, and thus they are not reliable comparators.[54]  For example, although the Plan's funds are actively managed, Plaintiff includes several passively managed "index" funds in her list of comparator funds.  Defendants contend that courts have rejected this kind of "apples-to-oranges comparison."[55]

Defendants also argue that Congress, the Department of Labor, and courts approve of financial institutions including their own affiliated investment products in their 401(k) plans, because "these practices are universal among plans of the financial services industry."[56]

---

[51]*Id.* (citing *Wildman v. Am. Century Servs., LLC*, No. 4:16-737, 2017 WL 839795, at *4 (W.D. Mo. Fed. 27, 2017); *Krueger v. Ameriprise Fin., Inc.*, No. 11-2781, 2012 WL 5873825, at *4 (D. Minn. Nov. 20, 2012)).

[52]*Id.*

[53]*Id.*

[54]*See Tussey v. ABB, Inc.*, 850 F.3d 951, 960 (8th Cir. 2017) ("funds . . . designed for different purposes . . . choose their investments differently, so there is no reason to expect them to make similar returns over any given time span."); *Meiners*, 2017 WL 2303968, at *3.

[55]Doc. 38 at 23; *see, e.g.*, *Turner ex rel. Davis N.Y. Venture Fund v. Davis Selected Advisers, LP*, 626 F. App'x 713, 717 (9th Cir. 2015) (rejecting comparison between actively managed fund and index fund because "allegations pertaining to a fund's performance must use mutual funds pursuing similar investment strategies as comparators.") (citation omitted).

[56]*See Brotherston v. Putnam Invs., LLC*, No. 15-13825-WGY, 2017 WL 2634361, at *3 (D. Mass. June 19, 2017) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009); Participant Directed Individual Account

Additionally, Defendants argue that the management fees paid to the affiliates were within the range of fees that courts have held are reasonable.[57]  Finally, Defendants argue that Plaintiff's allegations regarding Defendants' use of Plan assets to "seed" WR Financial-affiliated investment products are conclusory, and that her claim that Defendants should have pooled Plan assets to qualify for lower-cost institutional class shares is meritless.

The Court finds that Plaintiff states a claim of breach of fiduciary duties.  First, Plaintiff alleges more than simply that Defendants failed to select the cheapest or highest-performing funds to include in the Plan.  Plaintiff offers more than seventy-five funds that she alleges are comparable to the Plan's funds, and these comparator funds appear to invest in the same industries as the Plan's funds.[58]  Although Defendants take issue with Plaintiff's inclusion of some index funds in her list of comparable funds, the Court is not persuaded that this fact alone makes Plaintiff's claim implausible.  As Plaintiff states, of her more than seventy-five comparator funds, more than fifty are active funds.[59]  Even assuming the index funds included in Plaintiff's list are not comparable funds, the vast majority of the funds appear comparable.  Defendants have provided no authority that inclusion of some non-comparable funds among a list of comparable funds makes a claim implausible, and the Court is aware of no such authority.

---

Plans, 56 Fed. Reg. 10,724, 10,730 (Mar. 13, 1991)); *Dupree v. Prudential Ins. Co. of Am.*, No. 99-8337-Civ.-JORDAN, 2007 WL 2263892, at *45 (S.D. Fla. Aug. 7, 2007).

[57]Doc. 38 at 20–21 (citing, *e.g.*, *Hecker*, 556 F.3d at 586; *Loomis v. Exelon Corp.*, 658 F.3d 667, 670–71 (7th Cir. 2011)).

[58]*See* Doc. 15 at 22; Doc. 15-3 (comparing, for example, "Waddell & Reed Science & Tech Y" fund to "T. Rowe Price Science & Tech" fund, and "Ivy Real Estate Securities R6" fund to "Franklin Real Estate Securities R6").

[59]Doc. 45 at 23.

Furthermore, the question whether the funds Plaintiff presents are comparable is a question of fact that the Court will not resolve in the context of ruling on a motion to dismiss.[60]

Second, although a financial institution including its own affiliated funds in a 401(k) plan is an approved practice, Plaintiff alleges that Defendants breached their fiduciary duty by offering *only* proprietary investment products until 2016—and thereafter offering only one non-affiliated fund—which charged higher fees and performed poorly in relation to comparable non-proprietary funds and products.[61]  Third, Courts have consistently rejected the argument Defendants make that there is a "presumptive reasonableness" range for fees, as "this approach would effectively carve out a presumption of prudence for expense ratios that fell within a certain range."[62]  Instead, the determination of the reasonableness of fees is a "fact intensive" approach that "must account for all the factors which informed the fiduciaries' decisionmaking," and this determination will rarely "'be appropriate on a motion for summary judgment,' let alone a motion to dismiss."[63]  Fourth, the Court finds that Plaintiff's claim that Defendants used Plan assets to seed WR Financial products is not a conclusory allegation, but instead is a well-pled allegation that is entitled to the assumption of truth at this stage of the litigation.  Finally, Plaintiff's allegation that Defendants could have pooled the Plan's assets to obtain lower-cost institutional shares supports her fiduciary breach claim.

---

[60]*Wildman v. Am. Century Servs., LLC*, 237 F. Supp. 3d 902, 914 (W.D. Mo. 2017); *Cryer v. Franklin Templeton Res., Inc.*, No. C 16-4265 CW, 2017 WL 818788, at *4 (N.D. Cal. Jan. 17, 2017) ("Defendant may well be able to prove that these alternatives were not comparable or that they did not perform better in the long-run, but the Court may not resolve such factual questions at the motion to dismiss stage").

[61]*See Cryer*, 2017 WL 818788, at *4 (finding that plaintiff stated a claim of fiduciary breach based on similar allegations).

[62]*Lorenz v. Safeway, Inc.*, 241 F. Supp. 3d 1005, 1020 (N.D. Cal. 2017); *Troudt v. Oracle Corp.*, No. 116CV00175REBCBS, 2017 WL 1100876, at *2 (D. Colo. Mar. 22, 2017).

[63]*Lorenz*, 241 F. Supp. 3d at 1020 (quoting *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014); *Bd. of Trs. of S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of N.Y. Mellon Corp.*, No. 09 CIV. 6273 RMB, 2011 WL 6130831, at *3 (S.D.N.Y. Dec. 9, 2011)); *Troudt*, 2017 WL 1100876, at *2 (citation omitted).

Here, Plaintiff has alleged more than merely an excessive fees or underperformance claim. Rather, she claims that the proprietary funds Defendants selected charged excessive fees and underperformed in relation to comparator funds. At this stage, the Court accepts as true Plaintiff's allegations that these comparator funds are truly comparable to the Plan's funds. Thus, her allegations that Defendants selected funds that charged excessive fees and underperformed in relation to comparator funds support her fiduciary breach claim.[64] Plaintiff also alleges that Defendants offered duplicative funds to Plan participants, charging different fees for essentially the same product based on the branding of the product. Additionally, Plaintiff alleges Defendants used Plan assets to seed new WR Financial products. Taken together, these circumstantial facts give rise to a plausible claim that Defendants' process in selecting the Plan's funds was flawed, and that Defendants breached their duties of prudence and loyalty to the Plan participants. Accordingly, the Court denies Defendants' motion to dismiss as it relates to Plaintiff's fiduciary breach claim.

### 2. Prohibited Transactions Claim

Plaintiff brings prohibited transaction claims under 29 U.S.C. §§ 1106(a)(1)(D), (b)(1), and (b)(2). Section 1106(a)(1)(D) prohibits a fiduciary from engaging "in a transaction, if he knows or should know that such transaction constitutes a direct or indirect transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." Section 1106(b)(1) prohibits a fiduciary from dealing "with the assets of the plan in his own interest or for his own account." Finally, § 1106(b)(2) provides that a fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan

---

[64] *See Cryer*, 2017 WL 818788, at *4 (holding that plaintiff alleged plausible claim of fiduciary breach by claiming defendant offered "only its own products, including mutual funds and the money market fund, which charged higher fees than and performed poorly as compared to available comparable non-proprietary funds and products").

or the interests of its participants or beneficiaries." Thus, with the exception of § 1106(b)(2), a threshold question is whether the fiduciary is dealing with "assets of the plan."[65]

ERISA does not provide an explicit definition of "plan assets."[66] But 29 U.S.C. § 1101(b)(1) provides the following guidance on whether investments are "plan assets":

> In the case of a plan which invests in any security issued by an investment company registered under the Investment Company Act of 1940, the assets of such plan shall be deemed to include such security but shall not, solely by reason of such investment, be deemed to include any assets of such investment company.

Similarly, 29 C.F.R. § 2510.3-101(a)(2) states that "[g]enerally, when a plan invests in another entity, the plan's assets include its investment, but do not, solely by reason of such investment, include any of the underlying assets of the entity."

Plaintiff alleges that Defendants engaged in a prohibited transaction by causing the Plan to pay fees to WR Financial in connection with the Plan's investment in WR Financial-affiliated investment options. Additionally, Plaintiff contends that the challenged transactions were indirect transfers to a party in interest, as Defendants included the proprietary investment options in the Plan to increase the amount of fees being paid to WR Financial.[67]

Defendants argue that Plaintiff fails to state a plausible prohibited transaction claim because the investment management fees at issue "are paid by the mutual funds, not the Plan, and thus are not 'plan assets.'"[68] Defendants also argue that Plaintiff's "indirect use" theory,

---

[65]Defendants' arguments as to Plaintiff's prohibited transaction claims relate only to the issue of whether the management fees were paid by "Plan assets." Because § 1106(b)(2) does not incorporate "Plan assets" as an element of a prohibited transaction claim, the Court construes Defendants' motion as challenging all of Plaintiff's prohibited transaction claims except for the claim brought under § 1106(b)(2).

[66]*Haddock v. Nationwide Fin. Servs., Inc.*, 419 F. Supp. 2d 156, 167–68 (D. Conn. 2006) (citing *Acosta v. Pac. Enters.*, 950 F.2d 611, 620 (9th Cir. 2011)).

[67]Doc. 45 at 29 (citing *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 9936, 2016 WL 5957307, at *5 (S.D.N.Y. Oct. 13, 2016)).

[68]Doc. 38 at 26.

which asserts that Defendants caused the Plan to invest in WR Financial proprietary funds to increase the amount of fees flowing to WR Financial-affiliated entities, is not cognizable. [69] Defendants cite *Brotherston v. Putnam Investments, LLC*,[70] in which the District of Massachusetts rejected the plaintiffs' argument that "the payment of management fees constitutes 'an indirect transfer of Plan assets to a party in interest.'"[71]

The Court finds that Plaintiff has presented a plausible prohibited transaction claim. Defendants' primary argument is that the management fees at issue were paid out of the mutual fund assets, not Plan assets.[72]  But Plaintiff has alleged that each payment of fees to the WR Financial-affiliated entities was made "by the 401(k) Plan."[73]  Defendants contend that these allegations are conclusory and contradicted by other allegations in the Second Amended Complaint, including Plaintiff's claim that "within each of the WR FINANCIAL Funds or collective investment trusts within the Plan, management fees are paid to WR FINANCIAL or one of its affiliates."[74]  The Court is satisfied that Plaintiff's allegations regarding the payment of fees are not conclusory, but instead are well-pled factual allegations that are entitled to the assumption of truth.  Furthermore, although the court is mindful of the potentially contradictory allegations, on a motion to dismiss under Rule 12(b)(6), the Court must accept Plaintiff's well-pled allegations as true.[75]

---

[69]Doc. 46 at 15.

[70]No. 15-13825-WGY, 2017 WL 1196648 (D. Mass. Mar. 30, 2017).

[71]*Id.* at *5.

[72]Doc. 38 at 26–27.

[73]Doc. 15 at 21–22, 33–34.

[74]*Id.* at 13.

[75]*See Morales v. UBS Bank USA*, No. 2:14-CV-888-JNP-BCW, 2016 WL 3746527, at *5 (D. Utah July 8, 2016) ("Although such allegations may appear contradictory, they nonetheless survive a Rule 12(b)(6) motion to dismiss."); *Karsten v. Davis*, No. 12-CV-02107-MSK-KLM, 2013 WL 2120635, at *14 (D. Colo. Apr. 26, 2013), *report and recommendation adopted*, No. 12-CV-02107-RM-KLM, 2013 WL 2120632 (D. Colo. May 15, 2013)

Additionally, the Court finds that "[b]y alleging that Defendants included the proprietary funds for the purpose of increasing the amount of fees paid to [the affiliated entities], the Complaint sufficiently alleges that the challenged transactions were indirect transfers to a party in interest."[76]  Although the court in *Brotherston* found that such a claim was not cognizable, that finding was necessitated by the "First Circuit's decision in *In re Fidelity*, which adopted a narrow, formal approach to identifying 'plan assets' for the purposes of Section 1106."[77]  The Tenth Circuit, however, has not defined "plan assets" in a similarly narrow way.  In the absence of such authority, the Court finds Plaintiff's indirect transfer prohibited transaction claim plausible.  Because Plaintiff alleges that the Plan, rather than the mutual funds, paid the management fees, and because she alleges a plausible indirect transfer claim, the Court denies Defendants' motion to dismiss Plaintiff's prohibited transaction claim.

## IV.    Conclusion

In sum, Plaintiff presents plausible breach of fiduciary duty and prohibited transaction claims that are not subject to the three-year statute of limitations under 29 U.S.C. § 1113(2).  Accordingly, the Court denies Defendants' motion to dismiss.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss the Second Amended Complaint (Doc. 37) is **denied**.

**IT IS SO ORDERED.**

Dated: February 22, 2018

---

("Although the Court is wary of these contradictory allegations, on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take Plaintiff's allegations as true.").

[76]*Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 9936, 2016 WL 5957307, at *5 (S.D.N.Y. Oct. 13, 2016).

[77]*Brotherston*, 2017 WL 1196648, at *5.

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE